**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0962-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL A. HOWEY,

     Defendant-Appellant.

_____

Submitted December 8, 2025 – Decided January 21, 2026

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Municipal Appeal No. 08-04-24.

Michael A. Howey, self-represented appellant.

Sahil K. Kabse, Acting Sussex County Prosecutor, attorney for respondent (Shaina Brenner, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Michael A. Howey appeals from a November 8, 2024 Law Division order affirming his conviction and sentence in the Frankford Joint Municipal Court for the improper use of a wireless phone, N.J.S.A. 39:4-97.3, obstruction of windshield, N.J.S.A. 39:3-74, failure to possess a driver's license and registration and insurance identification card, N.J.S.A. 39:3-29, obstructing administration of law, N.J.S.A. 2C:29-1(a), and disorderly conduct, N.J.S.A. 2C:33-2(a)(2). Defendant raises several procedural and constitutional arguments, including lack of jurisdiction and violation of his due process rights. Rejecting these challenges, we affirm.

I.

In January 2023, Trooper James R. Lodema of the New Jersey State Police was patrolling the area of Clove Road in Montague Township, when he observed defendant operating a black Jeep Wrangler while holding a cell phone. Trooper Lodema also observed that the vehicle's windshield was obstructed by various mounted cameras and a radar detector, the rear window was covered with a flag and writing, and the absence of a front license plate. The trooper initiated a stop of defendant's vehicle, which ultimately led to defendant's arrest.

At the municipal court trial, the State presented the testimony of Troopers Lodema, Robert Hoffman, and Kyle Weiss, who all responded to the scene, and

2

introduced the troopers' body-worn camera footage and defendant's own photographs into evidence. Defendant was self-represented and did not testify. He, however, informed the court that he was there "as a special appearance" while "under duress, coercion and threat of arrest."

Trooper Lodema testified that he initiated the stop of defendant's vehicle because he observed him utilizing a cell phone while driving in the opposite direction. He further testified that he observed other violations as well, including the vehicle's obstructed windshield and back window, and absence of a front license plate. More particularly, Trooper Lodema recalled that the vehicle's windshield was obstructed by multiple cameras and a radar detector, and the rear window was approximately eighty to ninety percent covered by an upside-down American flag, a bible verse, and a statement that "all police are tyrant pigs."

After initiating the stop of defendant's vehicle, Trooper Lodema stated he approached defendant from the passenger-side of his vehicle—for his own safety—and asked him to roll down the window. Trooper Lodema repeated this request multiple times, but defendant refused to comply, prompting Trooper Lodema to call for additional units. In fact, defendant refused to submit to any

A-0962-24

of Trooper Lodema's commands and he never produced his driver's license, vehicle registration, or insurance documents.

Instead, defendant claimed he did not have to comply because "he wasn't traveling in commerce" and persisted in his efforts to challenge Trooper Lodema's commands. According to Trooper Lodema, defendant's statements did not make any sense to him. Defendant cross-examined Trooper Lodema, challenging his recollection of the sequence of events and his observations that defendant was using his cell phone while operating the vehicle. On re-direct, Trooper Lodema clarified that he contacted dispatch after defendant denied his request to roll down his window and continued talking with dispatch after he returned to his trooper vehicle. Dispatch confirmed the vehicle was registered in Maine under a different name.

The troopers' body-worn camera footage was played for the court, which showed the arrival of Trooper Hoffman on the scene. Trooper Hoffman testified that he was the first back-up unit on the scene and went to the passenger-side of the vehicle to talk with defendant to try to de-escalate the situation. He also asked defendant multiple times for his license, registration, and insurance, to no avail. At one point, he advised defendant that he was not under arrest, "but it's a traffic stop, you have to identify yourself." He then advised defendant to put

4 A-0962-24

his hands on the steering wheel and eventually moved to the vehicle's driver-side window where defendant persisted in his refusal to comply with Trooper Hoffman's multiple requests to provide his driving credentials.[1]

Thereafter, Trooper Weiss arrived on the scene. Trooper Hoffman testified that he told Trooper Weiss to go to his car and get a window break to get into the vehicle and remove defendant. Trooper Weiss testified that he broke the driver-side window of the vehicle and they "reached in, [] unlocked the interior of the door, opened the door and proceeded to extract defendant." Defendant was subsequently handcuffed, placed under arrest, and transported to the Sussex Station where medical personnel were summoned to evaluate and treat defendant for minor cuts sustained as a result of the broken glass during the extraction process.

Defendant was charged with improper use of a wireless phone, obstruction of windshield, failure to exhibit a driver's license, registration, and insurance, obstruction of the administration of law, disorderly conduct, resisting arrest, N.J.S.A. 2C:29-2(a)(1), and careless driving, N.J.S.A. 39:4-97.

---

[1] Trooper Hoffman estimated that he asked defendant for his credentials "well over five" times.

A-0962-24

Following the presentation of the evidence, the municipal court judge issued an oral decision finding defendant guilty of all but two of the charges, resisting arrest and careless driving, concluding the State had not met its burden of proof for those offenses. Based on his convictions, the judge imposed various corresponding fines and penalties.

The judge began by reviewing the charges and the applicable law with respect to each charge. He next summarized the troopers' testimony, noting that they were specific in their testimony, "did not embellish any testimony, maintained proper eye contact, [and] did not exhibit any nervousness or reluctance to answer any of the question[s]." He found all three troopers credible.

More particularly, the judge concluded, based on Trooper Lodema's testimony, defendant operated his motor vehicle while holding a cell phone in his left hand and was guilty of that charge beyond a reasonable doubt. He further concluded that the State had met its burden of proof that defendant was guilty beyond a reasonable doubt as to: obstruction of the windshield and rear window, failure to exhibit his driver's license, registration and insurance card, disorderly conduct, and obstructing administration. In sentencing defendant, the court

6

assessed applicable fines and penalties and sentenced him to a period of incarceration of fifty days and suspended forty-seven days of that term.

Defendant filed an appeal to the Law Division and also moved to vacate his convictions, arguing the court lacked personal jurisdiction, constitutional and procedural defects, and lack of due process.[2] Following oral argument, the municipal judge denied the motion to vacate defendant's conviction in its entirety, finding probable cause for Trooper Lodema's stop, and rejecting defendant's jurisdictional and constitutional challenges. The judge explained to defendant that there is no right to operate a motor vehicle on New Jersey highways without a valid driver's license, and that the municipal court had jurisdiction over the matter pursuant to Frankford Township's shared municipal court agreement under N.J.S.A. 2B:12-1.

Defendant appealed the judgment to the Law Division and the matter was assigned to Judge Michael C. Gaus. Judge Gaus reviewed "the full record of the municipal court trial, the written submissions of the parties; [and] . . . the oral presentations of both parties," and issued a comprehensive and well-reasoned decision affirming all aspects of the municipal judge's decision.

---

[2] The record includes a March 11, 2024 Law Division order dismissing defendant's February 2024 municipal appeal without prejudice pending the outcome of defendant's motion to vacate the judgment.

A-0962-24

Judge Gaus began his de novo review by conducting an exhaustive analysis of the testimony of each of the troopers. He found that the troopers asked defendant multiple times to produce his driving credentials and defendant "[was] extremely argumentative and belligerent with the officers."[3] He found the troopers' testimony credible, and the evidence adequately substantiated defendant's guilt as to each offense.

Judge Gaus also found the underlying stop was lawful based on the Trooper Lodema's observations, defendant was provided with notice and ample opportunity to present his defense, and that no procedural or constitutional violations occurred in the underlying proceedings. Judge Gaus accordingly imposed the same sentence as the municipal judge.

Before us, defendant raises the following points for our consideration:

ISSUE I

THE MUNICIPAL (TRIAL) COURT LACKED JURISDICTION.

ISSUE II

THE TRIAL COURT ERRED IN CONVICTING APPELLANT AND THE SUPERIOR COURT

---

[3] The order issued by Judge Gaus erroneously cited failure to exhibit a driver's license, registration, and insurance under N.J.S.A. 39:3-29 as N.J.S.A. 39:3-29a, N.J.S.A. 39:3-29b, and N.J.S.A. 39:3-29c, respectively.

A-0962-24

(MUNICIPAL APPEAL) ERRED IN UPHOLDING SAID CONVICTION.

ISSUE III

THE TRAFFIC STOP WAS UNLAWFUL AND WITHOUT REASONABLE SUSPICION.

ISSUE IV

THE STATE FAILED TO PROVE ITS CASE BEYOND A REASONABLE DOUBT.

ISSUE V

VIOLATION OF DUE PROCESS AND FUNDAMENTAL RIGHTS.

ISSUE VI

FAILURE TO PRODUCE EVIDENCE SUPPORTING THE ALLEGED OFFENSES.

ISSUE VII

RETALIATORY NATURE OF THE STOP VIOLATED FIRST AMENDMENT RIGHTS.

ISSUE VIII

FALSE CHARACTERIZATION OF APPELLANT AS A "SOVEREIGN CITIZEN" IS LIBELOUS, DEFAMATORY, AND UNSUPPORTED.

ISSUE IX

FABRICATED CLAIM OF "DANGEROUSNESS" IN

A-0962-24

ALLEGED POLICE FLYER VIOLATES DUE PROCESS AND DEMONSTRATES CONSPIRATORIAL BIAS.

ISSUE X

THE STATE FAILED TO PRODUCE AN INJURED PARTY, RENDERING THE CHARGES CONSTITUTIONALLY AND LAWFULLY DEFICIENT.

II.

Appellate review of a de novo conviction in the Law Division, following a municipal court appeal, is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470 (1999). We focus on "whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

Further, under the "two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." State v. Reece, 222 N.J. 154, 166 (2015) (quoting Locurto, 157 N.J. at 474). Our function is limited to determining whether the findings made by the Law Division "could reasonably have been reached on sufficient credible evidence present in the record." Locurto, 157 N.J. at 471 (quoting Johnson, 42 N.J. at 161-62). "[I]f the appellate tribunal is thoroughly satisfied that the

A-0962-24

finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction," then we can independently make new factual findings.  Ibid. (quoting Johnson, 42 N.J. at 161-62).

On appeal, defendant principally argues the municipal court lacked jurisdiction because neither the presiding judge, nor the prosecutor, nor the testifying officers could produce on demand documentation of their oaths of office, surety bonds, or other so-called "public artifacts."  Likewise, he argues the stop was unlawful because Trooper Lodema lacked reasonable suspicion or probable cause, asserting that this criminal claim was never corroborated with additional evidence outside of "a law enforcement officer's mere speculation or unsupported observations," and thus the State failed to meet its burden in proving all the elements of the offenses beyond a reasonable doubt.  He seeks a reversal of his convictions, vacatur of the judgment, and dismissal of all charges with prejudice.

As a preliminary matter, we reject defendant's arguments as meritless and affirm Judge Gaus' thorough and well-reasoned decision, which is amply supported by the trial record.  We add the following brief comments to amplify our opinion in certain key areas.

A.

We first turn to defendant's argument that the municipal court lacked jurisdiction. Defendant contends the municipal court lacks jurisdiction because the judge, prosecutor, and testifying officers did not produce their oaths of office or bonding documentation upon request. He further contends the State failed to establish statutory and constitutional authority because the presiding judge, prosecutor, and testifying officers did not produce documentation of their oaths of office or official credentials when requested, and the court did not address his repeated jurisdictional objections.

Municipal courts are generally courts of limited jurisdiction, but they possess jurisdiction over claims of disorderly conduct, motor vehicle stops, and all "cases arising within the territory of that municipality . . . ." N.J.S.A. 2B:12-16(a). As the Law Division correctly found, no statute requires such materials to be produced to a litigant as a prerequisite to jurisdiction. Moreover, defendant was stopped in Montague Township, a municipality served by the Joint Municipal Court of Frankford, which is statutorily authorized to exercise jurisdiction over violations within that township. See N.J.S.A. 2B:12-16. The offenses at issues—namely motor vehicle and disorderly conduct violations—

12

squarely fall within the subject matter jurisdiction of the municipal court.  See N.J.S.A. 2B:12-17(b).  Thus, defendant's argument is without merit.

B.

As to defendant's argument that the traffic stop itself was unsupported by reasonable and articulable suspicion, we similarly reject this argument as meritless.

A traffic stop is lawful when based on a reasonable and articulable suspicion that a traffic or other offense has been committed, and the State has the burden to prove by a preponderance of the evidence that such suspicion was present.  State v. Amelio, 197 N.J. 207, 211 (2008) (citations omitted); see also Delaware v. Prouse, 440 U.S. 648, 662-63 (1979) (recognizing the constitutional propriety of warrantless traffic stops if based upon articulable police suspicions of illegality).  Reasonable suspicion is a lower standard than probable cause and hinges upon the officer pointing to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."  Terry v. Ohio, 392 U.S. 1, 21 (1968); see also State v. Nishina, 175 N.J. 502, 511 (2003).

Here, both the municipal and the Law Division judges specifically credited the testimony of Trooper Lodema, who described defendant traveling

13

northbound and "utilizing a cell phone while he was in the course of operating his vehicle." Trooper Lodema also noted additional direct observations of traffic infractions, including how the "front windshield was obstructed because there were . . . cameras, and a radar detector mounted on the windshield," the rear window was also obstructed by writing and a flag, and the vehicle had no front license plate. Following these direct observations, Trooper Lodema executed a lawful traffic stop of defendant's vehicle. The municipal court credited Trooper Lodema's testimony as "very credible" and "without embellishment," and the Law Division judge found no reason to depart company from the municipal court's credibility findings as to the "credible testimony of the witnesses." We do not second-guess credibility assessments made by the two lower courts unless there is a "very obvious and exceptional showing of error," which we are not persuaded is present on this record. Locurto, 157 N.J. at 474 (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)).

C.

With respect to defendant's argument that the State failed to meet its burden of proving all the elements of the offenses beyond a reasonable doubt, we conclude that both the municipal court and Law Division relied on sufficient credible evidence in the record to find defendant guilty of each offense. Again,

A-0962-24

our review is deferential, particularly where, as here, both courts concur in their factual and credibility findings.  See State v. Hill, 199 N.J. 545, 559 (2009); State v. Medina, 147 N.J. 43, 49 (1996); Locurto, 157 N.J. at 471, 474.

As to the improper use of a wireless device charge, both courts credited Trooper Lodema's testimony that he observed defendant driving while holding a cell phone.  Credible police observations alone suffice to establish this offense. State v. Hyman, 451 N.J. Super. 429, 441-43 (App. Div. 2017).  Regarding the obstruction of the windshield charge, both courts found that the multiple cameras and radar detector affixed to the windshield materially obstructed defendant's view, a conclusion supported by testimony and defendant's own exhibits.

Likewise, the failure-to-possess credentials charges were amply supported by the consistent testimony of the troopers and video evidence showing defendant repeatedly refused numerous lawful requests to produce his license, registration, and proof of insurance.  The record before us also demonstrates that defendant purposefully obstructed the administration of law by repeatedly and consistently refusing the troopers' commands, failing to comply with document requests, and physically resisting removal from the vehicle, resulting in his forcible extraction.

A-0962-24

Lastly, the disorderly conduct charge is supported by ample evidence of defendant's refusal to comply with the troopers' commands throughout the stop, which created a hazardous condition without a legitimate purpose. Accordingly, we observe no basis to disturb the Law Division's well-supported and thorough decision and affirm the judgment and sentence entered by Judge Gaus.

D.

As to defendant's argument that the trial and municipal proceedings violated his due process rights, we are similarly unpersuaded. Due process under both the Fourteenth Amendment of the U.S. Constitution and Art. I, para. 1 of the New Jersey Constitution guarantees fundamental fairness in judicial proceedings, including the right to notice, the right to be heard, and a meaningful opportunity to present a defense. D.N. v. K.M., 429 N.J. Super. 592, 609 (App. Div. 2013) (citing Doe v. Poritz, 142 N.J. 1, 106 (1995)). In criminal and quasi-criminal proceedings, due process requires: advance and fair notice of the charges, the opportunity to cross-examine adverse witnesses, the right to present a defense, and proving all elements of the crime beyond a reasonable doubt. State v. Gibson, 219 N.J. 227, 239-40 (2014) (citations omitted).

Here, defendant received constitutionally adequate process at every stage. He was notified of all charges against him and appeared before the municipal

16

court, where he cross-examined the State's witnesses and introduced exhibits. Defendant also moved to vacate and supplement the record, advancing several legal, jurisdictional, and evidentiary challenges, all of which were considered and rejected by the municipal court. Moreover, defendant's claim of an improper plea entry before the municipal court is meritless, as the court properly entered a not-guilty plea only after defendant refused to enter any plea, as authorized by Rule 7:6-2(a)(1). We are thus satisfied defendant suffered no prejudice after having been afforded a full and fair opportunity to defend himself and file an appeal of his conviction, which he also availed himself of in the Law Division and before us. Accordingly, we affirm the judgment and sentence entered by Judge Gaus.

To the extent we have not addressed any of defendant's remaining arguments, we conclude that it is because they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

17